APFELBACHER, Respondent, vs. THE STATE and others, Ap-
pellants.

*March 7—April 3, 1918.*

*States: Immunity to suit: Waiver: Water and watercourses: Pre-
    scriptive rights: Pleading: Amendment to conform to proof:
    Riparian rights: Mills and milldams: Withholding and storing
    water: Reasonable use: Finding of fact: Grant of rights to state.*

1. Ch. 624, Laws 1913, authorizing this plaintiff to bring suit against
   the state, did not create or admit any liability on the part of
   the state, but merely waived its immunity from being sued by
   one of its citizens.
2. The claim of a lower mill owner to prescriptive rights in the use
   of the waters of a stream is *held* not well founded as against
   the older rights of an upper mill owner.

3. Although plaintiff's claim was based upon alleged prescriptive rights in the use of the waters of a stream, the court might properly grant relief upon the basis of rights which he had as a riparian owner merely, the complaint being considered as amended to conform with the evidence properly before the court.

4. The owner of an upper dam has the right to withhold and store up the waters of the stream at certain periods in order that he may more properly and efficiently carry out the purpose to which he, as riparian owner, may put such waters; but this right, like all other rights which a riparian owner, as such, acquires to the waters of the stream, is restricted always to a reasonable detention or a reasonable use measured and determined with reference to the capacity of the stream, the uses to which it is and has been put, and the rights of other riparian owners.

5. In an action by a lower mill owner against the state and the owner of an upper dam at the outlet of a lake, a finding by the court that the withholding by the state at times, under a contract with said upper owner, of the flow of water from the lake into the stream was not a reasonable or necessary use of the waters for the proper carrying on of a fish hatchery, is not a mere conclusion of law but a finding of the ultimate fact upon which a determination of the rights of the parties must be based.

6. The state cannot acquire from a riparian owner by contract a greater right as to the withholding of the waters of a stream than such owner had, or use such right in a way which would be unreasonable if the use were by said owner.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

The appeal is from a judgment granting plaintiff certain equitable relief.

The appeal in this case (no bill of exceptions being before us in the record) presents only the pleadings, findings, and judgment for review. From these findings it appears:

That the defendant *Humphrey* and his predecessors have for many years operated a grist-mill at the outlet of Lake Nagawicka in Waukesha county. Lake Nagawicka has an area of 1.41 square miles and its waters are held and maintained, to a certain extent, by a dam owned and controlled by

defendant *Humphrey* at this outlet. The stream forming the inlet and outlet to this lake is Bark river. One mile below Lake Nagawicka and on Bark river plaintiff and his predecessors had for many years also maintained a dam and operated a similar mill. The mill-pond at this point was about twenty-five acres in extent and held only sufficient water supply to run plaintiff's mill for a few hours. The mill and water power of defendant *Humphrey* was the elder of the two.

That in 1906 the *State of Wisconsin* established a fish hatchery just below Nagawicka lake with ponds numbered 1, 2, and 3, just below the lake and on the north side of the Bark river, and ponds numbered 4, 5, and 6 south thereof. Ponds. 1, 2, and 3 were supplied with water from a spillway on Lake Nagawicka; ponds 4, 5, and 6 by a twelve-inch pipe running from the waters of Lake Nagawicka through or under ponds 1, 2, and 3 and the Bark river. The waters from these six ponds, save. such as is lost by seepage or evaporation, ultimately find their way into Bark river above the plaintiff's dam. The total fall between the two dams is ten and one-half feet.

That for upwards of twenty years prior to 1906, as the two water powers were being operated by their respective owners, and with the natural flow of the Bark river between them, the upper mill had been operated practically every day continuously and the plaintiff was thereby enabled to also operate his mill continuously.

That by a written contract made in 1906 between the defendant *Humphrey* and the *State of Wisconsin* it was agreed that the *State* might place and maintain in Lake Nagawicka for the purpose of drawing water for use in the fish hatchery the twelve-inch pipe connected with the ponds numbered 4, 5, and 6, and might use for the hatchery so much of the waters of Lake Nagawicka as could be drawn through such pipe, and that if at any time such use by the *State* and by defend-

ant *Humphrey* in connection with his mill should lower the waters in the lake to a point twelve inches below a certain high-water mark, then the said *Humphrey,* his heirs and assigns, would absolutely desist and refrain from using any water from said lake for the running of the mill property or for any other purpose until the waters of said lake should again reach a point within twelve inches below such high-water mark.

That the defendant *State,* by reason of such agreement, claimed to have the right to and did exercise practical control over the waters at said dam and did at several times subsequent to 1906 shut off the outflow of the waters in Lake Nagawicka so that for periods of one or two weeks each the plaintiff was practically deprived of the use of the waters of Bark river and forced thereby to shut down his mill. That the natural flow of water from Lake Nagawicka into Bark river and from thence on into Upper Nemahbin lake is sufficient to operate the two mills in question, and that each of such mills is reasonably adapted to such watercourse, and the ordinary operation of the fish hatchery maintained by the *State of Wisconsin* is also a reasonable use of the natural flow of Bark river. That it is not necessary for the maintenance of the fish hatchery and its efficient operation that the defendant *State of Wisconsin* should avail itself of the attempted grant of power under the agreement between itself and the defendant *Humphrey,* and that the exercise of such attempted grant of power on its part is to impair the power and destroy the use of the mill of plaintiff in dry or low-water seasons. The operation of plaintiff's mill prior to the agreement between defendants in 1906 was of substantial value to him, but by the exercise by the *State* of such claim of right under the agreement there has been a substantial interference with, if not destruction of, the plaintiff's business.

That the mill of the defendant *Humphrey* may be efficiently operated, although not to its full capacity, when the

waters of Lake Nagawicka are down as low as a point fifteen inches below such high-water mark. By lowering the water in Lake Nagawicka proportionally more and more water is needed to generate the same amount of power in *Humphrey's* mill, and that therefore, as riparian owner, defendant *Humphrey* has the optional right, when the water in the mill-pond is as low as twelve inches below high-water mark, to either close his mill so that more water and power may be accumulated or to run his mill under low-water pressure.

As conclusions of law the court found that the defendant *State of Wisconsin* has made an unreasonable use of the waters of Lake Nagawicka and Bark river and that both defendant *State* and the defendant *Humphrey* should be restrained from exercising or attempting to exercise the power attempted to be given under the agreement between them so far as it affected the detaining of the water from Bark river in such manner as theretofore done under such claim of right and except only when such detention is a reasonable one having relation to the correlative rights and duties existing between the plaintiff and the defendant *Humphrey* as riparian owners. From such judgment the defendants appeal.

For the appellants there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general (attorneys for all appellants except *Ephraim Humphrey*), and by *J. E. Thomas* of Waukesha, attorney for the appellant *Humphrey;* and the cause was argued orally by *Mr. Messerschmidt* and *Mr. Thomas.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

ESCHWEILER, J. By ch. 624 of the Laws of 1913 the legislature expressly gave plaintiff authority to bring suit for the purpose of settling and determining all controversies be-

tween him and the *State of Wisconsin* with reference to this mill property on the Bark river and relative to the use of the waters of Bark river and Lake Nagawicka. The only effect of this legislation was to waive the immunity, which the *State* as sovereign has, from being sued by one of its subjects, and it neither created nor admitted any liability on the part of the *State*. *Apfelbacher v. State*, 160 Wis. 565, 152 N. W. 144.

In plaintiff's complaint he asserted that he had acquired certain rights by prescription against the defendant *Humphrey* in and to the water power in question. The determination of the court upon the evidence was, however, that the rights of the defendant *Humphrey* were older than those of the plaintiff. This took any question as to prescriptive rights out of the case.

Defendants contend that, the plaintiff having come into court upon allegations based upon a theory that his rights were prescriptive, the court could not consistently in this case grant him relief upon the basis of rights which he had as a riparian owner merely. The court, however, was fully justified in disposing of the case upon the evidence that was before it and in adjusting the rights of the parties in accordance therewith rather than upon any narrow construction of the pleadings. Under legislative and oft-repeated judicial declarations such pleadings as herein are to be considered as amended to conform with the evidence properly before the court.

In this state the owner of an upper dam has the right to withhold the waters of the stream at certain periods in order that there may be thereby created a sufficient storage of water to more properly and efficiently carry out the purpose to which he, as riparian owner, may put the waters of the stream. *Mabie v. Matteson,* 17 Wis. 1; *Timm v. Bear,* 29 Wis. 254; *Coldwell v. Sanderson,* 69 Wis. 52, 28 N. W. 232, 33 N. W. 591; *Lawrence v. American W. P. Co.* 144 Wis. 556, 563, 128 N. W. 440.

But the right to detain for a time, as well as every other right which a riparian owner acquires, as such, to the waters of the stream flowing through or by his land, is restricted always to that which is a reasonable detention or a reasonable use, and these terms are to be measured and determined by the extent and capacity of the stream, the uses to which it is and has been put, and the rights that other riparian owners on the same stream also have. There can be no absolute or fixed standard for the measure of such relative rights. The essential question to be determined by the court or jury trying the issues between the parties in each particular case is what is reasonable under the circumstances there presented. This was the view adopted by the trial court, and his finding, therefore, that the withholding, by the *State,* at times of the flow of water from Lake Nagawicka was not a reasonable or necessary use of the waters of Lake Nagawicka and the Bark river for the proper carrying on of the fish hatchery, is the controlling fact in this case. This determination by the court is not, as contended by defendants, a mere conclusion of law, but is the ultimate fact necessary to be determined before the court can properly arrive at conclusions of law from which a judgment may follow fixing the rights of the parties. This is none the less an issuable fact because it may and does require the consideration and consolidation of a number of other facts presented in evidence. The defendants and this court are bound by such finding, and with that fixed in the case there is no escape from the judgment as entered by the court below.

The right that defendant *Humphrey* has to hold back the waters of Lake Nagawicka for a time when below the high-water mark, so that the supply of water may thereby be increased, is one that is necessarily also within the limitation prescribed for all riparian rights of being kept within the boundaries of what is reasonable, and it cannot be severed from his entire rights as riparian owner, so that this par-

ticular element of those rights, that is, to withhold the natural flow of the Bark river, can be, in a measure, carved out therefrom and transferred to someone else and by that person used·in a manner that would be unreasonable if the use were by *Humphrey* himself.   The conveyance by *Humphrey* to the *State* confers no greater right with reference to these flowing waters than *Humphrey* himself had.   The condition of reasonable use attached to it before he conveyed it and remained with it after such conveyance.   The *State* stands in no better position with reference to its exercise than did or would the defendant *Humphrey*.

*By the Court.*—The judgment of the circuit court is affirmed.

Owen, J., took no part.