CONFIDENTIAL LOAN & MORTGAGE COMPANY, Respondent, vs. HARDGROVE, Sheriff, and another, Appellants.*

*May 9—June 15, 1951.*

* Motion for rehearing denied, with $25 costs, on September 11, 1951.

*George M. St. Peter* of Fond du Lac, for the appellants.

For the respondent there was a brief by *McLeod & Donohue* of Fond du Lac, and oral argument by *Joseph Donohue*.

FAIRCHILD, J. The first question presented on this appeal, to wit, the right to immediate possession of the articles covered by the conditional sales contract, must be resolved in favor of the respondent, because of the doctrine laid down in our cases and fully recognized in *Forgan v. Smedal* (1931), 203 Wis. 564, 234 N. W. 896. See also *Universal Credit Co. v. Finn* (1933), 212 Wis. 601, 250 N. W. 391. As contended by the respondent and decided by the trial court, the bringing of the tractor and trailer into the state of Wisconsin from the state of Florida for the purpose of delivering merchandise and the subsequent disabling of said equipment causing it to be placed in a garage for repairs did not constitute an acquiring of a new situs for the property which would require the filing here of a copy of the conditional sales contract under sec. 122.14, Stats. That section reads:

"122.14 *Refiling on removal.* When, prior to the performance of the condition, the goods are removed by the buyer from a county in this state to another county in this state in which such contract or a copy thereof is not filed, or are removed from another state into a county in this state where such contract or copy is not filed, the reservation of the property in the seller shall be void as to the purchasers and creditors described in section 122.05, unless the conditional sale contract or a copy thereof shall be filed in the county to which the goods are removed, within ten days after the seller has received notice of the county to which the goods have been removed. . . ."

The buyer of this particular equipment agreed not to remove from the state of Florida the machine in question without the consent of the seller. There was no filing of the conditional sales contract at any time in the state of Wis-

consin. Hence the question of the meaning of the word "removed" as used in the statute is to be determined, and in doing this we must follow the cases referred to. We agree that the Uniform Conditional Sales Act must govern. And, as said in *Forgan v. Smedal, supra* (p. 568), "It will be noted that the vendor is under no obligation to file his contract in the place to which the goods have been removed until he has notice that the goods have been removed into this state and until he has notice of the filing district to which the goods have been removed. If the facts of this case showed a removal in fact of the automobile from the state of Illinois into a filing district in this state, we should have no hesitation in holding that sec. 14 [Uniform Conditional Sales Act] applies and required the plaintiffs, as assignees of the seller, to file their contract or a copy thereof in the filing district in this state."

Under the Uniform Conditional Sales Act, the assignee of the vendor of the machine is not required to follow the daily traveling of the one using the machine and file notice wherever and whenever it happens to stop. Under the circumstances existing here there was no such removal as to result in a situs of the machine in Wisconsin. The filing in this state of a notice by the vendor or his assignee was therefore not required.

The respondent was entitled to bring its action in replevin, its right to possession not having been lost by failure to file. The important question, then, is to be answered in favor of the respondent, because the conditional sales contract belonging to the respondent gives it the right of possession.

The procedure followed by replevying from the sheriff is in accordance with the practice under such circumstances in this state. This appears clearly from the cases cited above, because the property, although in the custody of the sheriff, was wrongfully detained from the respondent when entitled to its immediate possession.

It has been suggested that the respondent ought to have intervened in the attachment action. However, it was not required to seek its relief by intervening in that proceeding. The attachment was aimed at one Harris, not the respondent. There is no pretense of a claim against the validity of the Confidential Loan & Mortgage Company's right to immediate possession, and as replevin is a possessory action, it has for its object the obtaining of the actual possession of the subject matter. The respondent has proceeded properly. 33 Words and Phrases (perm. ed.), p. 111; *Atwater v. Spalding* (1902), 86 Minn. 101, 90 N. W. 370; *Harrington v. Interstate Securities Co.* (Mo. App. 1933), 57 S. W. (2d) 438. The general rule, sustained by the great weight of authority, is to the effect that property seized by an officer under process may be subject to an action in replevin for its recovery. The doctrine rests upon the theory that where property of one person is seized under a process against another there does not result a legal custody, and the person aggrieved thereby is entitled to the same remedy in the law as for any other tortious act. *Commercial Inv. Trust v. Wm. Frankfurth H. Co.* (1922), 179 Wis. 21, 190 N. W. 1004.

The respondent was not made a party to the attachment proceedings, nor was its right to possession directly challenged by the pleadings in that action. Under the law and by the terms of the contract, respondent's rights have been unlawfully invaded, and the act of the sheriff was a wrongful taking. Replevin properly may be maintained to recover the property.

The cases called to our attention by appellants, such as *Griffith v. Smith* (1868), 22 Wis. 646; *Union Lumbering Co. v. Tronson* (1874), 36 Wis. 126; and the case of *Winslow v. Urquhart* (1875), 39 Wis. 260, discussed by respondent, are not controlling. Those cases deal with liens provided for by statutes particularly designed to protect the claims of individuals for labor expended on producing an

article of merchandise, to wit, logs. The plan and purpose of those statutes permitted a different proceeding from that followed under laws intended to protect an undisputed title and right of immediate possession. In the log-lien cases, the integrity of labor's lien was of primal importance. In the case at bar, title and the right of possession is the purpose to be served. The early case of *Gallagher v. Bishop* (1862), 15 Wis. *276, has continued to be authority for the rule that an officer, who seizes possession of chattels in such a manner as to enable him to maintain trespass or replevin against a wrongful taker, is properly subject to an action of replevin against him by the one entitled to immediate possession, if a stranger to the writ under which the officer acted. Mr. Justice PAINE, speaking for the court, said (p. *282) : "And it is an injustice to say to an owner that an officer may seize his goods, under process against another, in such a manner that he will himself be liable to the officer in trespass if he meddles with them, unless he can prove title, and yet that he has no legal remedy except thus to take the law into his own hands, and become a defendant in an action of trespass. When the law places him in such a position that he will be liable in trespass for taking the goods, if his claim is unfounded, consistent justice requires that it should furnish him a legal remedy to test the validity of the claim."

We pass over the suggestion that the pleadings were insufficient because of the omission of an allegation that the property was unlawfully detained by the sheriff as of no importance upon this appeal. The matter was sufficiently covered by the pleadings supplemented by stipulation of parties, and if there were need of more, the defect would have been readily amended if raised below.

The second point to be considered in the case is the one raised by the respondent upon its motion to review the ruling of the court disallowing as a proper disbursement the premium paid by the respondent for the bond it was obliged to

furnish in the replevin action. Sec. 204.11, Stats., contains a provision which reads: "Any party entitled to recover costs or disbursements in an action or special proceeding may include in such disbursements the lawful premium paid to such corporation [surety corporation] for a suretyship obligation." We are of the opinion that the trial court was in error in refusing to allow the respondent to tax as a part of his disbursements the amount paid as the premium on the surety bond. That ruling must be reversed, and the amount allowed as a proper disbursement. It follows that the court properly granted judgment for the return of the property to the respondent.

*By the Court.*—The judgment directing the return of the property to the Confidential Loan & Mortgage Company is affirmed. That part of the trial court's decision refusing to allow the disbursement for the bond is reversed, and the cause remanded with directions to amend its judgment and for further proceedings according to law.